IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

PRICILLA ANN VANHOOSIER,  :

                    Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.  :

Case No. 3:12-cv-084

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938);

1

*Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof

shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on October 28, 2008, alleging disability from April 2, 2007, due to asthma, COPD, emphysema, diabetes, bronchitis, histoplasmosis, swelling in her feet, and difficulty breathing. PageID 324-29; 399. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 172-78; 182-90. Administrative Law Judge Amelia Lombardo held three hearings and subsequently determined that Plaintiff is not disabled. PageID 81-108; 109-43; 144-65; 62-79. The Appeals Council denied Plaintiff's request for review, PageID 55-57, and Judge Lombardo's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Lombardo found that she met the insured status requirements of the Act through June 30, 2011. PageID 64, ¶ 1. Judge Lombardo also found that Plaintiff has severe asthma, chronic obstructive pulmonary disease (COPD), sleep apnea, and obesity, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* ¶ 3. Judge Lombardo found further that Plaintiff has the residual functional capacity to perform a limited range of light work. PageID 66, ¶ 5. Judge Lombardo then found that Plaintiff is capable of performing her past relevant work as a sales clerk, waitress, and manager trainee. PageID 72, ¶ 6. Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 73.

The record contains a copy of treating physician Dr. Koles' office notes dated May 22, 2008, to April 20, 2009. PageID 281-96. Those notes reveal that Dr. Koles treated Plaintiff for

4

COPD, tobacco use, hypertension, diabetes, asthmatic bronchitis, and left rotator cuff impairment. *Id.*

The record contains the office chart from treating physician Dr. Moore dated April 25, to June 7, 2006. PageID 497-521. The chart reveals that an April 25, 2006, EKG was essentially within normal limits and demonstrated a small amount of pericardial fluid and an April, 2006, chest x-ray showed minimal focal air-space disease, possibly related to atelectasis or minor infectious pneumonitis, *Id.*

Dr. Moore referred Plaintiff to Dr. Malcolm of the Signal Point Hematology/Oncology practice and on May 24, 2006, Dr. Malcolm reported that Plaintiff's lungs had scattered wheezes, she had trace bilateral ankle edema, that she had symptoms that could be consistent with chronic small pulmonary emboli versus COPD and that she could have sleep apnea. *Id..* On June 7, 2006, Dr. Malcolm noted that Plaintiff was doing well but had no energy, that her laboratory results were all normal, and that he suspected that she had obstructive sleep apnea. *Id.* A June 29, 2006, sleep study indicated that Plaintiff had moderate obstructive sleep apnea syndrome. *Id.* Dr. Malcolm noted on March 21, 2007, that Plaintiff was not using her nasal CPAP, was quite fatigued, and that her lungs had trace wheezes. *Id.* Dr. Malcolm noted further that Plaintiff needed to use the nasal CPAP, should try to keep from smoking, and needed to work on some weight loss. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Dulan & Moore-Dulan Family Wellness practice dated February 11, 2002, to May 16, 2008. PageID 533-75. Those records reveal that Plaintiff received care from Dr. Dulan at that facility for asthma, asthmatic bronchitis, and COPD exacerbation. *Id.* The notes also reveal that over time, Dr. Dulan noted

5

that Plaintiff's respiratory exam revealed wheezing, rales, and poor air movement, and that she frequently advised Plaintiff to stop smoking. *Id.*

Plaintiff was hospitalized May 10-16, 2008, for treatment of acute shortness of breath with fever and cough and some swelling in her legs. PageID 576-95. Plaintiff's diagnoses were identified as acute exacerbation of chronic obstructive pulmonary disease, persistent hypoxia despite treatment, acute bronchitis, nicotine addiction, obstructive sleep apnea not using nasal CPAP at home, exogenous obesity, gastroespohageal reflux disease, hyperglycemia, and labile hypertension. *Id.* During that hospitalization, Plaintiff was treated with medication, advised with respect to diet, exercise, and smoking cessation. *Id.*

Examining physician Dr. Swedberg reported on January 7, 2009, that Plaintiff's chief complaint was "shortness of breath", she was massively obese, was dyspnic during the examination, had scattered wheezes but no rales, rhonchi, or evidence of cyanosis, her neurological exam was normal, and that she had difficulty with ranges of motion of her spine. PageID 596-609. Dr. Swedberg also reported that Plaintiff's diagnoses were morbid obesity, shortness of breath with ongoing tobacco abuse, and noninsulin dependent diabetes mellitus, that Plaintiff continued to smoke two packs of cigarettes a day in spite of her respiratory complaints, that she was capable of performing a "mild amount" of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects, and that she would do best in a dust-free environment. *Id.* A pulmonary function study performed in conjunction with Dr. Swedberg's exam revealed moderate obstructive airway disease. *Id.*

The record contains Plaintiff's additional treatment notes from Dr. Koles dated through March 2, 2010. PageID 618-39. Those records reveal that Plaintiff continued to receive treatment

from Dr. Koles at the Warren County Health Department for diabetes, hypertension, tobacco use, and COPD. *Id.*

Plaintiff sought emergency room treatment on August 16, 2009, for complaints of abdominal pain and on December 28, 2009, for complaints of dyspnea. PageID 641-58; 659-74. On both occasions, Plaintiff was evaluated, treated, and released. *Id.*

Plaintiff was hospitalized April 16-22, 2010, after exhibiting increasing cough, fever, shakes, chills, and the inability to ambulate without shortness of breath. PageID 675-700. Plaintiff's admitting diagnosis was identified as acute exacerbation of COPD and she was treated with medications and oxygen therapy. *Id.* Plaintiff was discharged with oxygen therapy and her diagnoses were identified as acute hypoxic respiratory failure, chronic COPD acute exacerbation, hypertension, diabetes mellitus uncontrolled, obesity, nicotine addiction, and probably early cor pulmonale. *Id.*

Plaintiff received treatment for chronic keratitis at the Cincinnati Eye Institute during the period February 1 through August 1, 2009. PageID 702-06.

The record contains treating physician Dr. Hahn's office notes dated March 1-April 8, 2011, and which reveal that Plaintiff received treatment from Dr. Hahn for COPD, poor compliance/noncompliance, tobacco abuse, diabetes, hypertension, sleep apnea, skin lesions, and backache.  PageID 727-41. Dr. Hahn reported on April 4, 2011, that Plaintiff was able to lift up to two to three pounds occasionally and frequently, was not able to stand/walk for any amount of time, and was able to sit for up to one hour in an eight-hour workday and for one-quarter hour without interruption. PageID 723-25. Dr. Hahn also reported that Plaintiff's diagnoses were COPD and sleep apnea, that she was a smoker, and that she would miss work more than four days per month due to her impairments. *Id.*

A pulmonary function study performed July 26, 2011, revealed a mild obstructive pulmonary impairment. PageID 754-55.

Consulting physician Dr. Bernstein reported on August 2, 2011, that he had seen Plaintiff for a pulmonary function study on July 26, 2011, her diagnoses were chronic obstructive pulmonary disease, obesity, obstructive sleep apnea, hypertension, and diabetes, she reportedly had asthma attacks daily and was incapacitated for two to three hours during an average attack, and that she was not a malingerer. PageID 756-58. Dr. Bernstein also reported that Plaintiff's symptoms were frequently severe enough to interfere with her attention and concentration, she was capable of performing a low stress job, and that her prognosis was fair. *Id.* Dr. Bernstein opined that Plaintiff was able to sit for thirty minutes at a time, stand for ten minutes at a time, stand/walk for less than two hours in an eight-hour day, sit for about four hours in an eight-hour day, she would need to take a twenty to thirty minute break every two to three hours, and that she was able to lift/carry less than ten pounds frequently and up to ten pounds occasionally. *Id.* Dr. Bernstein also opined that Plaintiff must avoid all exposure to traffic exhaust and fumes, high humidity, odors, dusts, gases, perfumes, and solvents/cleaners. *Id.*

The medical advisor (MA) testified at the second hearing that the cause of emphysema eighty to eighty-five percent of the time is smoking, Plaintiff's December, 2009, chest x-ray does not indicate emphysema but rather atelectasis which is a different condition and which can wax and wane, and that Plaintiff's April, 2010, chest x-ray revealed large volume lungs with possible COPD. PageID 113-37. The MA testified further that the January 9, 2009, pulmonary function study was not a valid test, a possible cause of respiratory failure in a person who has sleep apnea is not using the CPAP machine, and that a major factor in Plaintiff's April, 2010, episode of

respiratory failure was her smoking. *Id.* The MA also testified that there was no indication in the record of Plaintiff's ongoing need for oxygen, Plaintiff probably has COPD but the severity cannot be determined based on invalid testing, and that quitting smoking can be associated with some pulmonary function improvement. *Id.* The MA testified that Plaintiff was precluded from performing medium or heavy work, she would be able to perform light work, there needed to be some independent confirmation from a treating physician that Plaintiff needed continuous oxygen therapy and what her pulse ox would be at rest and with exercise. *Id.* The MA testified further that Plaintiff did not meet or equal Listing 3.02, that he based his opinion as to Plaintiff's residual functional capacity on the assumption that her pulmonary function study was valid and that since the study was not valid, Plaintiff's RFC was probably higher. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by giving significant weight to the MA's testimony, by failing to give good reasons for rejecting Dr. Hahn's and Dr. Bernstein's opinions, by failing to find her entirely credible, and by failing to find that she is disabled pursuant to section 201.02 of the Grid. (Doc. 14).

In support of her first Error, Plaintiff essentially argues that the Commissioner erred by relying on the MA's opinion. PageID 771-72. In support of her position, Plaintiff relies on *Sherrill v. Commissioner of Social Security,* 757 F.2d 803 (6th Cir. 1985). PageID 772.

In *Sherrill,* a non-examining MA testified that the objective evidence in the record was ambiguous and accordingly, the MA made a "judgment call" that the claimant's impairments did not rise to listing-level severity. 757 F.2d at 805. In addition, the MA was an internal medicine specialist testifying contrary to the treating psychiatrists. *Id.* The Sixth Circuit found that the district court improperly relied heavily on the MA's "ambiguous" testimony to the exclusion of evidence treating physicians had provided. *Id.*

9

*Sherrill* is distinguishable from the present case. First, the MA's testimony in this case was not ambiguous and he did not base it on a "judgment call". Rather, the MA reviewed the evidence in the record, explained why he rejected some of it including the objective test results, and based his opinion on his review of the record. Second, the MA in this case is a board-certified specialist in internal medicine with a specialty in pulmonary diseases who testified about Plaintiff's alleged pulmonary impairment. PageID 288; 132. Accordingly, *Sherrill* is distinguishable from the present case and does not support Plaintiff's position.

Plaintiff also argues that the Commissioner erred by giving great weight to the MA's testimony because the MA did not rely on any medical literature in rendering his opinions that her first pulmonary function study was not valid, that she did not require continuous oxygen therapy, and that she is capable of performing light work. PageID 775 . In support of her argument, Plaintiff relies on *Carroll v. Commissioner of Social Security,* No. 1:09CV2580, 2011 WL 308056 (N.D. Ohio Jan. 28, 2011).

In *Carroll*, the court reversed the Commissioner's decision because he had relied on the MA's testimony which was "based on a generalized reference to medical literature, and not based on any direct knowledge gleaned from Plaintiff's testimony." *Id.* at *8. *Carroll* seems to be contrary to Plaintiff's argument. In *Carroll,* the MA relied only on the medical literature in rendering his opinion yet Plaintiff seems to argue that in this case, the MA's testimony was lacking because he *failed* to cite medical literature. Nevertheless, Plaintiff has failed to point to any regulation or case law that requires an MA to cite to medical literature in rendering an opinion. In fact, *Carroll* stands for the proposition that an MA may not rely only on the medical literature in offering an opinion but, rather, must base her or his opinion on the evidence related to the claimant's impairments. That is what the MA did in this matter.

Plaintiff's argument that the Commissioner erred by relying on the MA's testimony because the MA did not examine her is simply contrary to the Commissioner's regulations, see 20 C.F.R. §§ 404.1527 and 416.927, as well as Sixth Circuit law. See *Buxton v. Halter,* 246 F.3d 762, 775 (6th Cir. 2001).

Plaintiff argues next that the Commissioner erred by failing to give good reasons for rejecting Dr. Hahn's and Dr. Bernstein's opinions.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

11

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'"  *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."  *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2).  "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07*,citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5.  "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.  *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544.  "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has

12

held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

First, the Court rejects Plaintiff's argument that the Commissioner is required to give a treating physician's opinion controlling weight simply because of his or her treating physician status. Rather, as the above-cited authorities make clear, the Commissioner must give a treating source opinion controlling weight *if* the treating source opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544 (emphasis added).

Judge Lombardo determined that Dr. Hahn's opinion was entitled to little weight because it was not supported by objective findings, inconsistent with her treatment notes, and because Dr. Hahn based her opinion in great part on Plaintiff's subjective complaints. PageID 70-71.

Judge Lombardo's finding with respect to Dr. Hahn's opinion is supported by the record. First, in support of her April, 2011, opinion about Plaintiff's residual functional capacity, Dr. Hahn relied primarily on Plaintiff's subjective complaints. In addition, a review of Dr. Hahn's office notes reveals that she documented few, if any objective clinical findings. Indeed, at most, Dr. Hahn reported that Plaintiff exhibited wheezing.  In addition, Dr. Hahn's office notes reveal that on May 24, 2010, Dr. Hahn reported that since her April hospitalization, Plaintiff was using oxygen "as needed" and that she (Dr. Hahn) planned to discontinue Plaintiff's use of oxygen at her next visit.  Dr. Hahn's June 21, 2010, note indicates that Plaintiff was using oxygen only at

night, and there are no further indications in Dr. Hahn's treatment notes that Plaintiff required the use of oxygen. Finally, Dr. Hahn's opinion about Plaintiff's residual functional capacity is inconsistent with the other evidence of record including the MA's conclusions and the reviewing physician's opinion.

In assigning little weight to Dr. Bernstein's opinion as to Plaintiff's residual functional capacity, Judge Lombardo noted that Dr. Bernstein saw Plaintiff on only one occasion for the purpose of administering a pulmonary function test and that the result of that test revealed, at worst, mild findings. PageID 71-72.

Judge Lombardo's reasons for giving little weight to Dr. Bernstein's opinion are supported by the record. First, Dr. Bernstein is not a "treating" source as defined by the regulations. See 20 C.F.R. §§ 404.1502 and 416. 902. Specifically, Dr. Bernstein saw Plaintiff on one occasion in order to provide a pulmonary function study. Accordingly he did not provide Plaintiff any medical treatment nor does he have an ongoing treatment relationship with Plaintiff. Second, as previously noted the results of the pulmonary function study which Dr. Bernstein administered to Plaintiff revealed "*mild* obstructive pulmonary impairment". PageID 754. Such mild findings simply do not support Dr. Bernstein's opinion that Plaintiff's residual functional capacity is so extremely restricted.

The Commissioner had adequate reasons for giving little weight to Dr. Hahn's and Dr. Bernstein's opinions and he adequately articulated those reasons.

Plaintiff next challenge to the Commissioner's decision is that the Commissioner erred by failing to find that she was entirely credible. Plaintiff's position is that Judge Lombardo improperly found that her behavior was inconsistent, erred by finding that her (Plaintiff's) lack

of work history was not connected to her alleged impairments, and by failing to discuss her medications and the side effects thereof.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Judge Lombardo determined that Plaintiff was not entirely credible primarily on the basis of her noncompliance. PageID 68-69. The record supports Judge Lombardo's findings. For example, after undergoing a sleep study in June, 2006, and it was determined that Plaintiff had moderate obstructive sleep apnea, Plaintiff was advised to use a CPAP machine. However, the record is replete with documentation that Plaintiff failed to follow that medical advice. Additionally, several of Plaintiff's treating physicians including Drs. Malcolm, Dulan, Koles, and Hahn as well as physicians who treated Plaintiff during emergency room visits and hospitalizations, frequently advised her to stop smoking. Nevertheless, the record establishes that Plaintiff failed to follow that medical advice.  Moreover, at the time of the June, 2006, sleep study, Dr. Malcolm advised Plaintiff to lose weight, but the record does not reveal any attempt on Plaintiff's part to do so. Finally, as Judge Lombardo noted, Plaintiff's earnings records indicate that Plaintiff has a history of sporadic earnings dating back to 1992. PageID 364-66. For example, Plaintiff's earnings records reflect that from 1992, to her alleged onset date of April, 2007, reveal that she did not earn wages in 1996, 1997, and 1999, and for the remaining years, her wages varied from approximately $103.00 to $13,698.00.  *Id.* Finally, for the same reasons that the Commissioner had for rejecting Dr. Hahn's opinion, the Commissioner had an adequate basis for concluding that the medical evidence does not support Plaintiff's subjective complaints.

Under these facts, the Commissioner did not err by finding that Plaintiff was not entirely credible.

Plaintiff's final argument is that the Commissioner erred by failing to find that she is disabled pursuant to section 201.20 of the Grid. The thrust of Plaintiff's argument is that the evidence establishes that she is capable of performing, at most, sedentary work, and therefore she is disabled pursuant to the Grid.

Presumably, Plaintiff bases her argument on Dr. Hahn's April, 2011, opinion as to her (Plaintiff's) residual functional capacity. In essence, Dr. Hahn opined that Plaintiff is not capable of performing more than sedentary work. However, as noted above, the Commissioner had an adequate basis for rejecting Dr. Hahn's opinion. Therefore, the Commissioner was not required to find that Plaintiff is capable of only sedentary work and was therefore not required to find her disabled pursuant to section 201.20 of the Grid. Rather, in view of the MA's testimony, the reviewing physician's opinion, and the objective test results which reflect, at worst, mild to moderate findings, the record supports the Commissioner's finding that Plaintiff is capable of performing a limited range of light work.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be affirmed.

February 12, 2013.  *s/ Michael R. Merz*
United States Magistrate Judge

17

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).